Mr. Kingman. Good morning. May it please the Court, my name is Dale Kingman. I'm appearing on behalf of GEM East and GEM Center Northwest. There are two issues, I believe, before the Court today. The first relates to the meaning the Court is to give to the word, quote, on, close quote, in the context of a theft exclusion in a jeweler's block policy. The second issue relates to whether the events of November 6, 2002, actually constitute a robbery for Mr. Smith as opposed to a mere theft. The underlying purpose behind the attended vehicle exclusion is to require some exercise of diligence on the part of jewelers and salespeople when they have jeweler's cases and product and merchandise in their automobiles. Here, under the facts of this case, Mr. Smith was in his driveway at his personal residence. He was standing adjacent to his vehicle. He indicated that he was perhaps one pace away from his vehicle and he was reading some notes, waiting for his wife. The car was parked almost contiguous with the entrance to his garage. At some point in time, his attention was directed to some or a Chevrolet Tahoe. When he looked and turned to observe what was going on, he saw two men, heard a noise, yelled stop, realized what was going on, and in his own words, understood that he was in danger, and then fled into the house, locking the door. As I indicated earlier, the purpose of this is for an individual to exercise some diligence. Here, the goods were in his automobile, in his driveway, in his car, and he was adjacent to the car. But isn't the problem here that even if one took the broader view that the issue is whether he was attending the car, which is the introductory sentence, and even if one looked at it the way the California Supreme Court did and the way just the Seventh Circuit did, he wasn't attending the car. He was not paying attention to it. Well, I mean, you know, Your Honor, there are, for example, in the EMMI case, for example, under the California Supreme Court, one could say that he was attending a car because he was looking at his exhaust pipe, but he was distracted from the – in the sense he was distracted from the object, which is his merchandise in his car. He was no more attentive to the merchandise than Mr. Smith was. If you believe that Mr. Smith was – not only did he have to be nearby, but he had to be paying attention to the car. And he wasn't. Well, that's true in the sense that he was not concentrating on the vehicle. That is true. Under his own testimony, that is quite true. I don't know, however, that the touchstone of application of the exclusion ought to be whether someone is literally paying attention to his car in the sense where he's contiguous and adjacent to it, since it's the physical presence, you know, that promotes the protection of the property. It's not necessarily, it seems to me, that someone is not concentrating on their vehicle at all times. I mean, whether he was concentrating on his vehicle or not, the fact is, is that the robbers in this case came from out of the bushes to the left rear passenger side of the vehicle. It's a large vehicle. When you read these cases, then nothing helps with these cases. I'm sorry, say again? It appears when you read these cases that momentary distraction seems to be sufficient. Well, we wouldn't have these cases if, you know, people were always so vigilant that they were walking around their automobile at all times. I mean, in a sense, if you have, you read all the cases that have been cited by both parties, I mean, there is something that occurs in every instance to, and some robbers are a little bit more adventuresome than others. But it seems to me in this case, which is not too far from the EMMI case, in which I disagree with Judge Posner that it is not an outlier, that by having his physical presence adjacent to the vehicle, one pays for the vehicle, he was providing the necessary attention and attendance that is required under the exception of the exclusion. In other words, he was attending his vehicle. Be that as it may, I think in addition, something the district court, district judge, or magistrate judge did not address was the issue of robbery. In this case, we know that the rear window of the Tahoe was broken out. Entrance was secured through the broken out rear window. Does the record show that the insured heard that, saw that, was aware of it? You know, I searched the record, Your Honor, and the record does not show that because Mr. Smith was never asked that question. Or even when it happened? Pardon me, Your Honor? Or even when it happened? It being when the window was broken? Mm-hmm. No, the record does not evidence that, Your Honor. If the record is silenced, then how can that demonstrate fear or force? Well, because you have to look at what Mr. Smith said. He indicated, keep in mind that that... I'm talking about the window there. I understand what you're talking about. The statute itself, Your Honor, indicates that a taking by threat and use of immediate force, violence, or fear of injury. It also says, under the Washington statute, it also goes on to say that such taking constitutes robbery whenever it appears that although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear. And in this case, you recall the testimony of Mr. Smith, both in his police statement that he actually hand wrote and in his examination under oath, that he knew immediately what was going on and had a fear for his life because he understood that as a salesperson, someone had followed him, someone knew where he lived, and the greatest fear that he had was that he would not know where his personal residence was. But wouldn't your argument entail non-coverage? Because what's covered is theft? I'm sorry? What's covered here is theft, right? No. What is not covered is... What is covered? Theft is covered. Theft. All right. So if it's robbery, if robbery isn't theft, then it's not covered in the first place. No. Your Honor, what's excluded is theft from an unattended vehicle. If an individual is robbed, that's not excluded. This is an all-risk policy. I know, but if robbery isn't theft, then why is the robbery covered in the first place? Because it's not the – it's something more than simply the illegal taking of property. It is the illegal taking of property by force or intimidation or fear. What is covered under this statute? What is covered? Yes. It is the taking of property. It's the stealing of goods, among other things, under the policy, except if the goods are stolen, for example, from an unattended vehicle or, for example, a number of the cases where the salespeople could not show when the goods were taken, the mysterious disappearance. I'm going to save the remaining of my time for rebuttal. Certainly. Mr. Sale? Good morning. Jerry Sale for Jewelers Mutual. The question is, was Mr. Smith actually on his vehicle at the time of the theft? Because that's necessary in order for the car to be attended. The coverage is excluded if it's theft from an unattended vehicle. The term actually on is not ambiguous. There's no reason to construe it anyway but meaning actually in contact with the vehicle. On and near are not synonyms in regard to the phrase actually on the vehicle. Well, it's sort of odd. I mean, it certainly seems that one would not use that for usually to mean next to a car, but there are phrases in which on does mean near, such as he's coming on me or I'm or the house is on the border or something of that sort. Also, he's coming on to the car would not be a silly thing to say. He's coming close to it. It doesn't mean he's coming on top of it. I think if you take this phrase actually on the car, so you not only have on the car, but you have actually on the car, it cannot be misconstrued as near in that phrase. What one looks to under Washington law is the ordinary, is the understanding, the common understanding of the ordinary purchaser of insurance. And the phrase actually on the car must mean in contact with it, not near it. For instance, as stated in our brief, if you said put something on the car, if somebody placed it near the car, it wouldn't satisfy that. It wouldn't be no one would understand that that would be on the car in that sense. That may be because of the word put. Pardon? I mean, that may be because of put on. It's a very, language is very, you know, shaped. Well, if you change the phrasing to, you know, the briefcase is on the car, you would eliminate the put problem. Yes. So, and that would still work if the briefcase is actually on the car. The briefcase was actually on the car. I don't think that can be misconstrued in the ordinary parlance for the briefcase was near the car, or the briefcase was just outside the car but in proximity to. So you must take the language in context. And I think in context, it clearly means that. Now, ultimately, even Judge Posner, in his opinion, seems to think there's some give in it, i.e., if they're fueling the car, that he thinks that that would count on a theory that you have to fuel your car if you're going to drive your car, and you can't simply say if somebody can get out of the car and fuel it. But if you turn around while you're fueling the car, that's different. Judge Posner's decision, which I like a lot, especially in the calls, E-M-M-I, an outlier, is itself, I think, an outlier. He has done a very strange job of interpretation of a policy, looking to the purposes and then disregarding language in the policy as it meets his interpretation of what the purposes are. In fact, he came up with the idea in that opinion that if you lock things in the trunk, that would be sufficient for the purposes of the statute. And yet we know from all the cases that we see that when things are locked in the trunk and somebody breaks the window and opens the trunk and either takes the car or takes the things from the trunk, that exactly meets the risk in this case. So his reasoning is not perfect in that regard. I think it is helpful in some ways to understand what's trying to be affected here, but it's clear, and the cases except for E-M-M-I are essentially clear, that on, sometimes upon, must mean in contact with. I think on and upon mean the same thing in this context. No, I don't. Upon is more likely to have the meaning. I think upon is. A slightly broader meaning. Correct. I think upon, as was discussed in, I think it was the E-M-M-I decision, actually upon the vehicle is a strange phrase that isn't used in everyday language, whereas actually on the vehicle is. And therefore, you get more of a problem of ambiguity in the word upon. What's strange here is you can't quite figure out why anybody would want it this way. I mean, if somebody's in the car not paying attention, what difference does it make if they're standing outside the car and, you know, one foot from it, visually paying attention? And also, I don't know what your position is, what if they were leaning on the car? My position of leaning on the car would be that they were on the car. I think, in fact, the word actually on covers the situation where they're in contact with the car, for instance, opening the back. That seems right to me. So if this guy had been leaning on the car while he was reading whatever he was reading, it would have been fine. Yes. Now, what's the point of that? Why would anybody want a rule like that? I don't – I would suspect there's not an exact point to that. However, we have a drafting issue. And what the insurance company said was actually on. If the insurance company said near, this would be an entirely different policy, and there would be a much different question about what is near. And you can see the slippery slope starts to go that direction. Is that coverage available, by the way? I believe it is. You can get coverage – in fact, this policy indicates that you can get coverage for an unattended car. I can't remember what phrase it is, but there's something internal in the policy that says – oh, it's in the exclusion. It says unless the car is specifically described, we will not provide coverage with that from an unattended car. It was disturbing about this definition, and this happens a lot of times in both statutes and contracts. You say for – from in and out of view, that's not attended. Well, I sort of know what I mean – what that means. I know what attended means, right? This guy was probably not attending the car. He was near it, but he wasn't watching. Then it goes on to define an attended vehicle as a person actually in or on the vehicle. If I was defining an attended vehicle, that's not how I would define it. I would define an attended vehicle as a vehicle that somebody was attending in a sufficient way to deal with something if something happened to it. Absolutely. You would. In other words, if attended – if the word attended were not defined, it would be defined as the common purchaser of – the ordinary purchaser of insurance would define it. But in this case, it is a defined term, and it's defined to mean actually in or on. And therefore, we must accept that meaning within the policy to determine whether the car was attended. And in this case, it wasn't. I would point out very briefly the reasons why I think the E-M-M-I case is not applicable, and I would point out that that's a 4-3 decision, which is, I believe correctly, an outlier. But number one is that the word upon is different, as we just discussed. Number two, that decision depends very much – and you can see this from a careful reading of that case – it depends very much upon the reasonable expectations doctrine, which is accepted in California, is not accepted in Washington. Under Washington, the expectations of the insured are measured only in regard to the actual language of the policy, not in regard to expectations of coverage different from the words in the policy. And so that's a very, very much different point. The third point is – and this was raised in Mr. Kingman's argument – and that is that the E-M-M-I case also had peculiar facts, what Judge Posner thought were unusual facts that may have affected the result, in regard to the attending to the vehicle, the extent to which there was a focus on the vehicle at the time. And in our case, as you pointed out, there was – he was not attending to the vehicle. Now, he was close to it, but he was not attending to it. Under these facts, by the way, what we do know is that he left the vehicle a couple of times. So we don't actually know when the perpetrators approached the vehicle, whether it was when he had gone to the house or when he was, in fact, standing next to the car. And all of those things really do not need to be delved into, because what we know is that he was not actually on the car at the time of the theft. Going briefly to the question of robbery, this exclusion applies to theft. And theft, as even stated in the brief of the appellant, theft is an element of robbery. Robbery is a particular kind of theft. There is no reason to qualify theft in this regard. There's no reason to say, yes, it excludes theft from a not – from a vehicle that's not attended, but not if that theft is robbery, because there is nothing in the provision of the policy to indicate that at all. This was a theft. It's a defined term in the policy. It clearly was that, and therefore, it's excluded unless the car was attended, and it wasn't. Unless there are questions, we would ask that the Court affirm. Thank you. Thank you, Mr. Sayle. Mr. King. Thank you. The definition of theft is the illegal taking or removal of property. Now, as we pointed out in our brief, all robberies are thefts, but not all thefts are robberies. In this case, the fact is that – or under the facts of this case, this property was taken at a time when Mr. Smith was in fear for his own safety. Well, all robberies are thefts, and all robberies are thefts, and therefore, robberies are within the theft exclusion. This is an exclusion, Your Honor, and an exclusion has to be narrowly interpreted and construed under Washington law. Right. Here, they've already – they've defined as simply the illegal taking or removing of property. They didn't define it as the illegal taking or removing of property by force or fear on the part of the person whose property was taken. EMMI is – Because the cat was illegally taken or removed. It could have been by force or fear, or it could have been without force or fear, but it was still an illegal taking or removal. Yes. I understand. The EMMI case makes it – in my view, does make it somewhat clear that there is a distinction under the policy for these exclusions between a robbery and a theft, and a robbery is not excluded. A theft is. Going back to one of Mr. Sale's earlier points, in which he indicated that it's the common understanding of reasonable and short in the State of Washington, which controls interpretation of a definition of an undefined word, I would be hard pressed, indeed, in the JMP case out of Maryland, that court was hard pressed, too, to believe that someone reasonable and short would believe that they had to be sitting on their car, that is, sitting on the trunk or the hood, as argued by jewelers in their brief, in order for the exclusion – the exception to the exclusion to apply. In other words, to attend a car, you either have to be in it or you literally have to be on it. The JMP case said that not even the insurance company in that case, St. Paul, would argue that that's required, and I submit to this Court that no reasonable and short would believe that if they were standing within one pace of their automobile that they have no coverage, but if they were sitting on the trunk or on the hood of a car, that they would have coverage. To me – Could there be some thesis that if you're in or on a car and somebody goes and touches the car to get in it, you're going to feel it? It's not simply a question of watching something. In other words, if the guy was actually touching the car, if he'd been leaning against the car at the time, and these thieves started pushing on the car or something, he would have – you would have had to see it. He could have felt it. Well, he did feel something. I mean, I think his – He saw it. Well, what he said was he felt something, and that's what caught his attention. Something caught his attention. So my time is up, but he was near, adjacent, a pace away, and he did in fact feel it. What the insurance company here wants to suggest is that I have to touch the car even though I may be daydreaming. Nonetheless, I have coverage. That's an absurdity. Thank you. Thank you, Mr. Kamen. Thank you, counsel. The matter just argued will be submitted.
judges: Alarcon, Rymer, Berzon